IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| EDWARD HOOD, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:17-cv-01150-STA-jay |
| ) | |
| GRADY PERRY, ) | |
| ) | |
| Respondent. ) | |

ORDER
GRANTING MOTION TO SUPPLEMENT ARGUMENT,
TAKING MOTION TO DISMISS UNDER ADVISEMENT,
AND
DIRECTING PETITIONER TO SHOW CAUSE

Petitioner Edward Hood, Jr., has filed a second amended habeas corpus petition (the "Second Amended Petition"), pursuant to 28 U.S.C. § 2254. (ECF No. 13.) Before the Court are Petitioner's motion to supplement his arguments (ECF No. 26) and Respondent Grady Perry's motion to dismiss the Second Amended Petition as untimely (ECF No. 28). For the following reasons, the motion to supplement is **GRANTED**,[1] the motion to dismiss is **TAKEN UNDER ADVISEMENT**, and Petitioner is **DIRECTED** to show cause why the Second Amended Petition should not be dismissed on the grounds that the claims are non-cognizable and without merit.

**BACKGROUND**

---

[1] Petitioner titled his motion "Motion to Amend the Petition." (ECF No. 26.) However, as Respondent correctly notes (ECF No. 30 at 1), the motion does not assert new claims, but simply presents additional arguments for equitable tolling of the limitations period. The Court therefore construes the document as a motion to supplement Petitioner's arguments and **GRANTS** the motion.

In June 2008, the Henderson County, Tennessee, grand jury returned a five-count indictment charging Hood with one count of sexual battery, two counts of rape of a child, and two counts of incest, all involving one of his daughters. (ECF No. 18-1 at 4-9.) The prosecution subsequently took a *nolle prosequi* of the sexual assault charge. (*Id.* at 51.)

At the jury trial, "the victim. . . testified that she was eleven years old when the first crime . . . occurred." *State v. Hood*, No. W2009-02501-CCA-R3-CD, 2010 WL 5054422, at *1 (Tenn. Crim. App. Dec. 6, 2010), *perm. appeal denied* (Tenn. Apr. 14, 2011). "She stated that on February 24, 2007, her father," after entering her room, removed both his clothes and her pajamas and proceeded to get "on top of her, and penetrate[] her vagina with his penis." *Id.* "Before leaving her room, Hood told the victim, 'If you say anything[,] I'm going to hurt you." *Id.* (alteration in original). The victim further testified that, "[o]n July 28, 2007, . . . her father had sexual intercourse with her in the same manner as on February 24, 2007." *Id.* She stated "that she and her mother reported the crimes to the police some time in December when her father was no longer living with them." *Id.*

A correctional officer from the Henderson County Jail testified that, in December 2007, "during a random search of Hood's cell, [he] found a note written by Hood, which stated, 'I, Ed Hood, fingered and [f---] my youngest child, [the victim], and said some sex-related things to [the victim's] friend, [K.B.]. She and [the victim] were talking about sex and having a threesome. I said I wanted to see that. Signed, Ed Hood.'" *Id.* (alterations in original).

"Justin Wallace, an investigator with the Henderson County Sheriff's Department, testified that Hood asked to speak with him on December 26, 2007, regarding the note that was found in

2

his cell." *Id.* at *2. Hood was given "his Miranda rights," after which he "signed a written waiver of these rights, and then . . . gave the following statement:

> I, Ed Hood, did advise Investigator Wallace that there was a possibility that while I was messed up on pills that I could have had sexual relations with my daughter, [the victim]. I also advised him that while my daughter was on the phone with [K.B.] I overheard them talking about having a threesome. I advised [K.B.] that I would like to see that when she was eighteen.

*Id.*

"[A] lieutenant with the Lexington Police Department, testified that" she conducted "a forensic interview for the victim at the Carl Perkins Center." *Id.* "Although she attempted to talk to Hood about these crimes, he refused to talk to her." *Id.* The witness explained "that she did not interview the victim's sister, K.P., because she was not living in the home at the time that these crimes occurred." *Id.*

"The defense recalled the victim to the stand." *Id.* "During questioning by defense counsel, the victim acknowledged telling a forensic interviewer that her father had never sexually abused her." *Id.* She explained that she lied "because [she] didn't want [her] dad to get in trouble, because [she] was scared of [her] dad." (ECF No. 18-3 at 126-27.)

"[T]he victim's aunt and Hood's sister" testified "that she did not find the victim to be an honest, truthful child." *Hood*, 2010 WL 5054422, at *2. "Victoria Westerfield, the victim's cousin, testified that the victim told her at a Christmas party that 'she lied about her daddy's case and misse[d] her daddy.'" *Id.* Brenda Riley, the victim's paternal grandmother, "opined that the victim was not a truthful child." *Id.*

Hood testified that he did not "commit[] the crimes in this case." *Id.* at *3. "He stated that the victim was a 'daddy's girl' when she was younger; however, he stated that not too long ago he had called the police because [she] had become 'unruly.'" *Id.* When cross-examined, "Hood said

that he was surprised to discover that the victim had no disciplinary problems at school," and "also acknowledged that the victim's grades had improved since she no longer lived with him." *Id.*

The victim's mother testified "that Hood had become slightly more strict with the victim just before the victim made the sexual abuse allegations against him." *Id.* "During cross-examination by the State," she "said that she knew Hood was committing these crimes because she 'heard moaning' when Hood would go into the victim's room," and "that Hood would stay in the victim's room for thirty minutes to an hour." *Id.*

The jury found Hood guilty as charged. *Id.* at *1. The trial court imposed consecutive twenty-three-year sentences for the rape of a child convictions, and concurrent five-year sentences for each of the incest convictions, for a total effective sentence of forty-eight years. *Id.* On December 6, 2010, the Tennessee Court of Criminal Appeals ("TCCA") affirmed the judgments of conviction. *Id.* at *8. The Tennessee Supreme Court denied discretionary review on April 14, 2011. (ECF No. 18-10.)

"On July 15, 2014, [Hood] filed a *pro se* petition for post-conviction relief alleging, along with his claims, that the statute of limitations for his claims should be tolled due to his incompetence." *Hood v. State*, No. W2016-01998-CCA-R3-PC, 2017 WL 2482991, at *3 (Tenn. Crim. App. June 7, 2017), *perm. app. denied* (Tenn. Oct. 4, 2017). The post-conviction "court appointed . . . counsel and ordered . . . a mental evaluation of the petitioner to determine his competency." *Id.* at *4. After an evidentiary hearing, "[t]he post-conviction court filed an order dismissing the petition as untimely[.]" *Id.* The Tennessee Supreme Court denied discretionary review on October 4, 2017. (ECF No. 18-18.)

4

Hood subsequently filed a petition for writ of error *coram nobis* in the Circuit Court of Henderson County, Tennessee, alleging that he had new evidence of his actual innocence.² (ECF No. 18-19 at PageID 855.)  On March 31, 2017, the *coram nobis* trial court denied relief.  (*Id.* at PageID 866-68.)  The TCCA affirmed the lower court's decision on May 9, 2018.  *Hood v. State*, No. W2017-00934-CCA-R3-ECN, 2018 WL 2149216, at *1 (Tenn. Crim. App. May 9, 2018.)  Petitioner did not file an application for permission to appeal to the state supreme court.

Hood subsequently filed a motion to correct the record with the state court, asserting that the trial transcript was missing "vital testimony as well as witnesses [who] took the stand in said Trial."  *Hood v. State*, No. W2019-00598-CCA-R3-ECN, 2020 WL 883124, at *1 (Tenn. Crim. App. Feb. 21, 2020) (alteration in original).  The court denied relief and the TCCA affirmed.  *Id.* at *2  The appellate court found that the request to correct the record was untimely.  *Id.*  The court also determined that relief was not warranted because "Petitioner failed to state what the [alleged missing] testimony included or how such testimony would serve as a basis for reversal in this court."  *Id.* at *2.

## DISCUSSION

Hood filed his original *pro se* habeas corpus petition on August 4, 2017.  (ECF No. 1.) The Court thereafter ordered him to file an amended petition on the Court's form (ECF No. 6),

---

² As pertinent here, "a writ of error *coram nobis* will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." Tenn. Code Ann. § 40-26-105 (b).

which he did (ECF No. 7).³  On August 16, 2018, he filed his Second Amended Petition.  He asserts that the TCCA in the *coram nobis* proceeding violated his right to due process when it denied his request for an evidentiary hearing to establish his actual innocence (Claim 1), and erred in denying his actual innocence claim (Claim 2).⁴  Petitioner's assertion of actual innocence is based upon purportedly new evidence in form of a letter from his daughter K.P. stating that her sister, the victim, told her twice prior to trial and once after trial that she lied about the sexual abuse.  (ECF No. 15-1 at 1-2, 5.)  Hood also relies on a letter from his niece stating that the victim "admitted to [her] at a Christmas dinner that she did lie on her father to get him in trouble because she was mad at him for punishing her . . . for having a boy in her room."  (*Id.* at 6.)

On July 22, 2020, Respondent supplemented the state court record to include the proceedings related to Petitioner's motion to correct the record.  (ECF No. 27.)  On the same day, he filed his motion to dismiss the Second Amended Petition as untimely, and a memorandum in support.  (ECF No. 28 & 29.)

## I.   Legal Standards

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See* 28 U.S.C. § 2254.  Under § 2254, habeas relief is available only if the prisoner

---

³  This case was stayed twice pending Petitioner's effort in the state courts to obtain *coram nobis* relief on his claim of actual innocence and to correct the state-court record.  (ECF No. 12 & 22.)

⁴  The Court has consolidated the Second Amended Petition's Ground One and Ground Two as "Claim 1" because they both allege that Hood's right to due process was denied when he was not granted a hearing on his actual innocence claim.

6

is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or . . . 'involved an unreasonable application of' such law; or . . . 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing

7

evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

A § 2254 petition is subject to a one-year limitations period, commencing from four possible dates:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The limitations period is statutorily tolled during the time "a properly filed application for State post-conviction or other collateral review . . . is pending[.]" 28 U.S.C. § 2244(d)(2). The time bar is also subject to equitable tolling where the petitioner demonstrates "that he has been pursuing his rights diligently[] and . . . that some extraordinary circumstance stood in his way and

8

prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted).

The limitations period may also be "overcome" through a "gateway" claim of actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). A valid claim of actual innocence requires a petitioner to "show that it is more likely than not that no reasonable juror would have convicted him in the light of ... new evidence." *Id.* at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The United States Supreme Court has cautioned that the actual innocence exception should "remain rare" and "only be applied in the extraordinary case." *Id.* at 321 (internal quotation marks omitted).

## II.     Analysis

Respondent argues that, pursuant to 28 U.S.C. § 2244(d)(1)(A), the AEDPA limitations period began running when Hood's judgments of conviction became final, and that it expired in July 2012, which was five years before the original petition was filed. The date is arrived at as follows.

Petitioner appealed his convictions to the Tennessee Supreme Court, but he did not appeal to the United States Supreme Court. His judgments of conviction thus became final when the time for appealing to the United States Supreme Court expired, which was ninety days after the Tennessee Supreme Court denied permission to appeal. *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000) ("[T]he one-year statute of limitations does not begin to run until the time for filing

9

a petition for a writ of certiorari for direct review in the United States Supreme Court has expired."); Sup. Ct. R. 13 (a criminal defendant has ninety days following entry of judgment by the "state court of last resort" in which to file a petition for writ of certiorari). Permission to appeal was denied on April 14, 2011, and ninety days from that date was Wednesday, July 13, 2011. The limitations period started the next day, *see Bronaugh,* 235 F.3d at 284, and expired one year later, on Monday, July 16, 2012.[5] The Petition, which was not filed until August 4, 2017, was therefore over five years late.

Petitioner does not dispute that he filed the Petition several years after his convictions became final. He insists, however, that he is entitled to equitable tolling due to "mental incompetency." (ECF No. 26.) In addition, a liberal view of his *pro se* submissions suggests that he also is asserting that he can overcome the late filing because he is actually innocent of rape, incest, and sexual assault. Respondent argues that Hood has not presented any evidence of incompetency, and his purported proofs of actual innocence are not new, reliable evidence that would likely have changed the trial outcome.

The Court need not resolve the timeliness issue because there are other, more straightforward, reasons why the claims should be dismissed.[6] *Cf. Pough v. United States,* 442

---

[5] One year later was Saturday, July 14, 2012. Therefore, the limitations period expired on the next business day, Monday, July 16, 2012. *See* Fed. R. Civ. P. 6(a)(1)(C) ("[I]f the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.")

[6] Neither party has discussed whether the claims, which arguably allege "fresh constitutional violation[s]," might be governed by the one-year limitations period provided by § 2244(d)(1)(D). *Sexton v. Wainwright*, 968 F.3d 607, 612 (6th Cir. 2020).

10

F.3d 959, 965 (6th Cir. 2006) (in a § 2255 habeas proceeding, court is not required to rule on the statute of limitations issue if the petition may be denied on other grounds).

It is well-established in the Sixth Circuit that "error committed during state post-conviction proceedings can not provide a basis for federal habeas relief." *Alley v. Bell*, 307 F.3d 380, 387 (6th Cir. 2002) (citing *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986)). Therefore, Claim 1, which asserts that the state *coram nobis* court violated Hood's right to due process by failing to hold an evidentiary hearing, is non-cognizable in federal habeas. *See e.g., Brown v. Warden, Lake Erie Corr. Inst.,* No. 1:11cv2765, 2014 WL 132367, at *17–18 (N.D. Ohio Jan. 14, 2014) (petitioner's claim that state court deprived him of due process by denying him a hearing on his motion for a new trial based on new evidence was non-cognizable); *Lloyd v. Warden, Chillicothe Corr. Inst.*, No. 1:15-CV-485, 2016 WL 1128490, at *4 (S.D. Ohio Feb. 16, 2016), *report and recommendation adopted sub nom. Lloyd v. Warden, Chillecothe Corr. Inst.*, No. 1:15-CV-485, 2016 WL 1110452 (S.D. Ohio Mar. 22, 2016) (petitioner's claim that the state post-conviction court's "fail[ure] to provide him with an evidentiary hearing . . . deprived him of his due process rights" was non-cognizable)

Furthermore, as discussed above, a § 2254 claim must be predicated on an alleged "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Hood contends in Claim 2 that the *coram nobis* court violated his federal constitutional rights in concluding that his actual innocence claim is without merit  The Sixth Circuit has held, however, that there is no "freestanding actual-innocence claim" under federal law "because the Supreme

11

Court has yet to" decide the issue. *Stojetz v. Ishee*, 892 F.3d 175, 208 (6th Cir. 2018). Claim 2 is thus subject to dismissal as non-cognizable.[7]

Finally, even if Claims 1 and 2 were cognizable, Petitioner would not be entitled to relief. As the Sixth Circuit reasoned in *Stojetz*, "the showing required for [a free-standing actual-innocence] claim would be greater than that required for a gateway-innocence claim." *Id.* (citing *House v. Bell*, 547 U.S. 518, 555 (2006)). Therefore, "if [a petitioner] cannot meet the standard for a gateway-innocence claim—viz., establishing that 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt[,]'—he cannot meet the [greater] burden" for a free-standing claim. *Id.* (quoting *Schlup*, 513 U.S. at 327) (citation omitted) (second and third brackets in original). The Court concludes that Hood does not meet the lower gateway standard for two reasons.

First, K.P.'s statements are not reliable, and the niece's statements are not new. When assessing purported evidence of actual innocence, a court must view with "a fair degree of skepticism" witness statements that are made for the first time years after the crime. *Herrera v. Collins,* 506 U.S. 390, 423 (O'Connor, J., concurring). K.P's statements are suspect because the

---

[7] Even if Petitioner means to assert that the TCCA's *coram nobis* decision was contrary to clearly established United States Supreme Court law, or that is was the result of an unreasonable application of such law to the facts of his case, he would not be entitled to relief. Specifically, "because the Supreme Court has recognized that the question whether there exists a 'federal constitutional right to be released upon proof of actual innocence ... is an open question,' *District Attorney's Office for the 3d Jud. Dist. v. Osborne,* 557 U.S. 52, [71] . . . (2009), a state court's failure to grant relief on the basis of actual innocence cannot be contrary to or an unreasonable application of any clearly established federal law under § 2254(d)(1)." *Haynes v. Bergh*, No. 13-10358, 2014 WL 6871263, at *33 (E.D. Mich. Dec. 5, 2014) (internal quotations marks omitted).

12

letter that contains them is dated nine years after the criminal trial.  As for the niece, her letter is not new evidence because it contains the same allegation about the victim's statement at the Christmas dinner that the niece testified to at trial.  (*See* ECF No. 18-3 at 140-41.)

Second, even if qualifying as new and reliable evidence, the statements contained in the letters would not likely have changed the outcome of the trial.  In addition to hearing the niece's testimony, the jury heard the victim admit on the stand that she told someone at the Carl Perkins Abuse Center that the defendant never had intercourse with her.  (*Id.* at 126.)  When asked why she said that, the victim explained "[b]ecause I didn't want my dad to get in trouble, because I was scared of dad." (*Id.* at 126-27.)  The jury thus heard evidence nearly identical to that contained in the letters, but it implicitly credited the victim's testimony that Hood sexually abused her.  In other words, Petitioner has raised no basis for vacating his convictions that the jury had not already considered.  Additionally, the evidence of guilt was substantial, as it included not only the victim's testimony, but also the mother's testimony about what she heard when Hood was in the victim's bedroom and Hood's own written confessions.

Accordingly, for the reasons stated, the claims are non-cognizable and without merit.  The Court is mindful, however, that it has, *sua sponte*, addressed issues beyond the scope of the motion to dismiss.  Therefore, in the interest of fair notice and opportunity, the Court **DIRECTS** Petitioner to **SHOW CAUSE** within twenty-one (21) days of entry of this order why the Second Amended Petition should not be dismissed on the grounds discussed herein.

Failure to comply with this order will result in dismissal of the Second Amended Petition without further notice pursuant to Fed. R. Civ. P. 41(b).

13

The motion to dismiss is **TAKEN UNDER ADVISEMENT** pending Petitioner's submission.

    **IT IS SO ORDERED**.

                                **s/ S. Thomas Anderson**
                                S. THOMAS ANDERSON
                                CHIEF UNITED STATES DISTRICT JUDGE

                                Date: February 8, 2021